Mr. Costello, we note that you have been appointed under the Criminal Justice Act, and we want you to know the court very much appreciates your willingness to take the appointment and represent your client in a zealous manner. Thank you, Your Honor. May it please the court. Government counsel, my name is David Costello. I represent appellant Jose Drew, who is currently serving a 360-month sentence in USP Beaumont. Mr. Drew was convicted at jury after jury trial of one count of being a felon in possession of a firearm. For purposes of today's argument, well, first of all, Mr. Drew has raised a number of issues on appeal. I'd like to start with the issue of the introduction of evidence under Rule 404B of six prior Missouri felony counts of conviction for offenses involving possession of or illegal use of firearms. As identified by the parties, the proper standard for determining whether the evidence is admissible under Rule 404B is that the evidence must be relevant to material issue, similar in kind, supported by sufficient evidence, and its potential prejudice does not substantially outweigh its probative value. As the court is aware, and as indicated in the briefing, Mr. Drew concedes the second and third prongs of that test. He does persist in suggesting and arguing that the introduction of the prior convictions was not relevant to a case. Mr. Drew, I don't know that I can point to a case that says how many convictions is too many convictions, but as I point out in the reply brief, is that the cases that the government appears to rely on to suggest that those firearm offense-related convictions are proper under 404B appear to be limited to single convictions. And so while there might be an argument that a single conviction might be proper under 404B, certainly once we get to the point of having six prior convictions, it's getting to the point where it's not only cumulative, but there's virtually no probative value to the additional introduction of those prior convictions, such that the only purpose for introducing that evidence would be for purposes of showing that Mr. Drew is a propensity to commit firearm-related offenses. And so I don't know that I can point to a case where a number is set as to where that limit is, but certainly as additional evidence of prior convictions is introduced, it would be difficult to argue that the probative value is not being reduced while the unfair prejudice is being increased. And certainly that's jumping ahead to that fourth prong. Now, the government in its briefing suggests that the limiting instruction, for instance, is able to address that very issue to overcome any issues of unfair prejudice. However, for those same reasons, when we're not talking about two convictions or three convictions, but we're talking about six prior convictions, it's pushing the limits even of the reality of how effective that limiting instruction is going to have on the jury. And it's frankly also undercutting any arguments of harmless error. The government can point to the fact that the jury knew that Mr. Drew was previously convicted of a felony, which is certainly one matter. But the fact is that after the introduction of these six firearm convictions, the jury is certainly left to conclude that the defendant is someone who commits firearm-related offenses. He's now charged with a firearm-related offense and is on trial for that. So Mr. Drew suggests, and I suggest that it's highly prejudicial and offering little to nothing in the form of probative value. As Mr. Gassell, I understand that you are contesting whether it's material to the case as well. Does your argument, does that argument hinge on the number of convictions that they offered up one, it wouldn't be material? And if that's your argument, how are you distinguishing this case from some of our case law on that, almost that very issue? Yes, Judge, and there is certainly Eighth Circuit case law directly on point with that. And in the briefing and here today, the issue with whether or not that's relevant to a material issue, Mr. Drew relies on the D.C. Circuit Court case that is cited in the briefing, United States v. Linares, maintaining that the government has no obligation to prove intent and therefore none of those prior convictions would be relevant for purposes of a material issue. Counsel, what about constructive possession? Isn't there an intent element of constructive possession that's evident in this case? Well, with regard to the constructive possession. And I may be wrong. I mean, don't take my question at gospel. But I mean, my question is, is that a relevant issue for constructive possession? Well, and certainly, Judge, it was, it could be an issue for constructive possession. Looking at the record, the trial record, and I should point out that I was not trial counsel at the time. But looking at the trial record, the primary thrust of the government's evidence seemed to be seemed to focus on actual possession. The government relies on a paid informant who gave testimony with regard to the defendant actually possessing the firearm, as well as a photograph of the of the firearm itself on Mr. Drew's phone. So the thrust of the government's case appeared to be that of actual possession. Certainly, when we're talking about his knowledge, and again, you could be getting back to the situation of if it's an issue for constructive possession. Certainly, that could be fertile ground, I suppose, for the government to argue that one of these convictions would be relevant to that issue. But they're still left with the they're still left with the fact that any subsequent introduction of those of those other counts of conviction is going to be cumulative. And it's only going to be relevant to propensity. And that's obviously something that's improper under these circumstances. I'm trying to keep track of my time here on the small screen. Um, just to finish up with the issue of harmless air, Mr. Drew certainly maintains that the air was not harmless. The evidence again that the jury heard regarding the possession, whether actual or who initially stated on the stand that he was not sure whether Mr. Drew actually ever had the firearm in question, or at issue in his hand, he certainly later changed his testimony and his answer. But at least his initial answer was that he didn't remember. Council would the with the think that the the 404 be evidence in this case is more relevant if it's a constructive possession theory? I mean, you sort of gone back and forth on which one you think was the main theory for the government. But does that that that seems to matter in terms of your argument for whether it's material? Does it? The it certainly makes the a a conviction more material under those circumstances if it is a theory of constructive possession of constructive possession. It but it still comes back to whether or not six of these prior convictions is going to be is going to be probative at that point, and it would still maintain that once you get past that introduction of a firearm related offense that anything beyond that is going to be cumulative and is not going to be proper under under the prongs for 404 B purposes. Regarding harmless air, the evidence that was presented at trial was through a paid informant. There was no recording of the of the actual meeting between the Anthony Smith, the paid informant and Mr Drew. The picture that I referenced earlier in his reference in the briefing of the firearm on Mr Drew's phone was discovered. However, the case agent testified that it could not be determined who took the picture or the circumstances of how the picture got to be on Mr Drew's phone. There was DNA evidence that was recovered. On the fire, Mr Drew's DNA could have been transferred to the firearm without him actually touching it, so given. Given the evidence that was presented at trial, it can't be said that the air in in in allowing the jury and the introduction of these prior convictions that the air did not influence or had only a slight influence on the verdict such that the air was not harmless. It was highly prejudicial and likely to result in his jury convicting Mr Drew based on those prior convictions. Before I run out of time, I do want to jump ahead and talk about the substantively unreasonable of the sentence itself. The district court imposed a 30 year sentence here. Mr Drew's serving 360 months for a single felon in possession of firearm conviction. There was a codefendant in this case, Maurice Jefferson. He was the intended target of this investigation. And the target of this controlled purchase or attempted purchase of this firearm. Mr Jefferson, so he's convicted of possessing the identical firearm, the very same firearm. Received a sentence 36 months now because this is a firearm offense and by operation of the guidelines and the very same convictions that we've just been talking about. For purposes of Drew's guidelines and greatly elevated his offense level from presumably level 14, jumping them all the way up to a level 33. So we're talking about a firearm offense where that happens, where prior convictions will elevate the offense level and not in a small, small way. Within the district court, relying in large part on those very same convictions, the same convictions that jumped him from 14 to 33. You know, putting Mr Drew's guidelines at basically that 20 year level. Sentencing court slaps on another decade of time and counsel. I mean, that was part of it, but didn't the district court say that he had never seen anybody be so violent while they're awaiting sentencing in this case? And that's definitely there. It's definitely in the record. And Mr Drew, I mean, there was plenty in the record of assaultive behavior by Mr Drew while in custody. And certainly we're not suggesting that that can't be a factor for the court to impose some type of variance. But there's no doubt that a good portion of that upward variance was based on his criminal history. And it's to go from 235 months on the low end of the guidelines to bump them up to 360. It's really that type of extreme deviation from the guidelines that the 8th Circuit has warned seriously undermines sentencing uniformity. And for those reasons, we do believe that the sentence was substantively unreasonable. I see that I've gone over my time. I apologize. If there's any more questions from the court, I'd be happy to take those. I don't see any. Thank you for your argument. Thank you. Now, Mr. Coppi. May it please the court. My name is Phil Coppi. I represent the government in this matter. Mr. Costello has raised four issues on appeal. He spent most of his time arguing the admission of the prior convictions that I will devote most of my time to that then. Well, counsel, let me jump right in and follow up on a line of questioning that we discussed with Mr. Drew's counsel. So if the admission of one prior conviction can be admitted to show knowledge in intent, why isn't the admission of six of them unduly prejudicial? In other words, what's the probative value of convictions two through six? Um, well, first of all, you're dealing with, you know, the court was where you're talking about three incidents. So you're talking about three instances because armed criminal action and the robbery, second degree, essentially the same offense. Um, but there is no, uh, Mr. Costello said all of my cases that I cited and I haven't looked through all of them involve, you know, single convictions, but I know that's not the case because this court recently affirmed one of my cases. I wish I could remember the name of it offhand. Um, where if there were multiple prior convictions entered, um, obviously if one conviction is probative, two is somewhat more probative. Now I suspect that there comes a point if you have more probative or is it cumulative? Well, I mean, it becomes cumulative at some point, but I would say that three incidents, it's not cumulative at that issue and very long. Let's go, let's go back to my question then. What is the probative value of set of convictions two through six? Well, the same value that conviction one would have. I mean, so if it's the same, but it's not more probative, it's, it's just cumulative. No, my, I think my argument would be your honor. It's, it's like anything else. If you've done it multiple times, I mean, obviously having done it two or three or four times is clearly more than one time. Pardon? I think you're just saying propensity. No, I, it tends, it tends to show knowledge. If one shows knowledge, why wouldn't two? Why wouldn't three? I mean, I'm saying that at some point you might get to a situation where you say, all right, wait a minute. You've, you've proved your point. You have enough, but now that was that point. What would you say that point is in three incidents? Is it seven convictions? Is it eight? I mean, where do we draw the line? And I guess more importantly, how do we draw that line? Well, what the courts have done is first of all I don't know where the line is. I don't know that I remember a case where the court said, wait a minute, you got to eight or nine or 10. That's too many. I certainly know that we have, we have affirmed, this court has affirmed cases where you have more than three or six. But first of all, I was going to say the argument that the defendant made, as I understand, it was not that we use too many. It was, we shouldn't have used any at all. And now counsel, let me ask you about that. Because I think that's another way of getting at the same question. As you know, under our U.S. versus Walker decision, past convictions can be admissible to show knowledge or intent. So how did Drew's past convictions show his knowledge of the Glock handgun in this case or his intent to possess it? Well, I mean, you'd have to, first of all, the court's opinions have held repeatedly that it tends to do that. I don't know. Are you arguing that it's just per se admissible? I think our case law says it's admissible for knowledge and intent, not just admissible for anything. Well, right. It's admissible to show that he knew it was there. I mean, the gun was found at one point between the passenger's seat where he was sitting. And so his argument, of course, would have to be, since he denied it, that he didn't see it. He didn't know it was there. He didn't intend to possess it. And so the fact that you previously possessed a weapon, I mean, some people have never possessed a weapon in their life. There's people out there, I'm sure, who've never touched a handgun, who ever had a handgun. The fact that he's had had it before and in a criminal situation, I think, tends to show that, yeah, he knew it this time. So it's not being shown, it's not being introduced to show propensity. It's being shown that he knew it was there and that he intended to possess it. Now, the defendant's argument is, is that based on this D.C. case, that intent is not an issue. But obviously, you could have a situation where, say, the police are closing in and I have the gun and I hand it to my accomplice and say, here, you know, potato. He knows he's got it, but he didn't intend to possess it because somebody handed it to him. That's simply clearly a case where, yes, you have to not only know you've got it, you've got to intend to have it. And the construction, the constructive possession instruction makes that clear, that you look at possession and the intent to exercise control. And it doesn't matter even if that D.C. circuit was right and intent wasn't an issue in this case. It certainly goes to show knowledge. So, yes, I don't think there is a number. I mean, I'm not saying that there isn't wouldn't be a number at which point it might be. You know, it might be all right. That's too much. But it certainly isn't three incidents, six convictions. And it certainly isn't a case where he's challenged. It's not like he's admitted that he did it. He's challenged the sufficiency of our evidence. I mean, that's what's ironic about it. He's saying on the one hand, we didn't need it. It was cumulative. But on the other hand, he's saying, wait a minute, all of the evidence that the government had could be explained away. Yeah, we have the informant saying I saw him possess it. But, you know, he might have equivocated on that. We've got a picture of the gun on the phone. No evidence who took it. Mr. Coppi, though, isn't there also just the argument of prejudice, though, that you could have such prejudicial evidence come in that that there could be the argument that all the jury looked at was, well, he's done this six times before and just make the decision on that. So isn't there something to just the kind of semi freestanding prejudicial argument? Well, the reason I mean, yes, he could make the courts have emphasized that the instruction that tells the jury, you know, one of the reasons we yeah, we keep out generally evidence of prior convictions is the fear that the jury is going to say he did it once. He's going to do it again. So we have tailored an instruction. The courts have that basically tells the jury that's not what this evidence is being put into evidence for. This evidence is limited to the question of knowledge. And if you show if you if you don't believe that it shows that he knew it, well, then you have to disregard it. And again, the nature of this case felon in possession. The court already knew court the jury already knew that we're dealing with a felon here. So it's got prior convictions in this kind of case are going to have less prejudicial value than or a fact, I should say, that they would normally because the jury already knows it. But the case law from this court has emphasized repeatedly that when you give this kind of an instruction and jurors are presumed to follow their instructions, they're going to set that aside and they're not going to say, hey, he did it before. So he must be guilty this time. That's why they give the instruction. The other thing that tends to mitigate the kind of prejudice, Judge Kelly, you're talking about is the fact that, you know, how how did the government treat this? How did they emphasize it? Were they hammering it away, hammering away at a closing argument? And in this case, we never said a word, not because it wasn't relevant, not because it wasn't admissible, but because we were aware of the case law, obviously, that says if you stay away from it and closing argument, it's going to be less prejudicial. You know, we wanted to put it in there to make sure that we had all our bases covered, that you couldn't say that as the evidence that shows that the key issue, because knowledge and intent was the key issue in the case. You know, nobody was contesting that the gun that they didn't find the gun, that they weren't trying to sell the gun. The whole argument here was, you know, it wasn't me. It was it was it was the other guy. So I think the combination of the fact that the instruction told the jury that the fact that we stayed away from it and closing argument, not that we were required to, but I think we thought that all things considered, that's the that's the way to go. And as I said, the case law indicates that is a strong consideration in determining, you know, is how much is too much. Unless there are any questions on that point, let me let me go to the he has an argument on mere presence, which I assume he is chosen to submit on the briefs. I guess I'll just say simply, this was not a mere presence case. Obviously, there was evidence that he had the gun in his hand. We had DNA on the trigger guard. There are at least three cases we've cited that say you don't even need to consider the question of of whether whether you get the instruction if there's no evidence of mere presence. But even in the cases where this court has held that there may be evidence to support it, they've also said that in almost every case, if you have a situation like we have here where you've got the jury, I mean, this is that was really the only only issue in the case is whether, you know, he had the gun or whether it was the other guy. And so counsel, though, counsel, were you the one that requested the the instruction on actual versus constructive possession, sort of giving the jury the understanding that the defendant could be in actual physical possession of this or the constructive where they don't actually have to have it in their hands. If that's an instruction that the parties proposed, that's the court to submit to the jury. Why then isn't it at least reasonable to put forward a mere presence sort of to to counter that constructive possession theory of possession? Well, again, if you have I mean, we had evidence, I think, to answer one of the other judges questions. We had evidence here of both constructive and actual. I mean, that DNA shows it's in his hand. The our witness said he had it, but we also have it lodged between the actually holding it. You could argue construction. So so it was it was it was there. But it isn't just I mean, just the fact that you have evidence of constructive possession doesn't mean that's that's mere presence because mere presence means I was just there. I didn't know anything about it. And so do you think it would have been an abuse of discretion to give the mere presence instruction in this case? Probably not, because I think it was redundant. First of all, I don't know who would have. You know, obviously, we don't have a right to appeal that. But I don't think even assuming that that that we that we did, it would have probably been extraneous. And that's what the case law says. The case law says, OK, even in situations where we say, all right, maybe it maybe it could have been warranted. It's an accurate statement of the law, certainly, that mere presence doesn't get you convicted. But what they've said is where you have all these other instructions to talk about actual versus constructive possession, talk about how he had to knowingly possess the weapon there. Basically, they preclude any possibility that the jury could be convicted on a mere presence theory. The defendant could have been convicted on a mere presence theory. And that's you know, that's the point of most of the cases that, you know, maybe if you have a multi count case where one of these counts kind of gets lost in the in the woods. But here, this is the only case the jury was considering is the only count. So the only issue they were  And that's what his argument was. And the court's instructions told him he's got to knowingly and intentionally possess that you can't be convicted on mere presence. I see I like a minute and a half or left. I did want to touch on the sentence. I know it's a significant sentence. But as Mr. Gassel pointed out, because of his prior record, he had obviously an extremely elevated guidelines. And we not only had we not only had the prior three incidents of robbery, he was on parole from two of those. And then you had just the atrocious record. I mean, these are like felony offenses. I don't know that they're anymore prosecuted as but in and of themselves where he's attacking guards, he's attacking inmates. He's doing all And this is consistent because I think there were 31 conduct violations when he was in state court. So granted, this is a serious sentence for possessing a firearm. It's a it's a bigger sentence that his co-defendant got. But there's nothing in the record, a that his that his co-defendant was anywhere similarly situated, had any of these what is what his guideline range was or had any of the kind of conduct violations that Mr. Drew had, coupled with the fact that, as I pointed out in my brief, when you're talking about sentencing disparities, you're actually talking about national disparities. You're not talking about disparities between individual defendants. So, yes, this is a situation where he did get a serious sentence, no doubt about it. But when his guidelines range was nearly three, the top of his range was nearly 300 months. It's not that much of an upward variance. And I think under this court's precedence, it cannot be held to have been substantively unreasonable. Thank you. Thank you, Mr. Cappi. Does Mr. Gastello have any rebuttal time left?  Um, Judge, just just very briefly, um, just want to reiterate the fact that when we do get to the point where six prior convictions are being introduced, the jury's left with the conclusion that Mr. Drew, it is somebody who does have a propensity, and that can be the only reason why the government sought to and was ultimately successful in introducing that evidence to the jury. And it's likely that the jury looked at that evidence and threw up their hands and said, Mr. Drew is somebody who is somebody that commits felony firearm related offenses. And that's the basis to convict him. Thank you, Judge. Thank you to both counsel for your arguments here today. We appreciate them and we appreciate your briefing and we will take the matter under advisement.